IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

RAMON DELSOL HERNANDEZ,
a/k/a ROMAN D. HERNANDEZ,
     Petitioner,

vs.                        Case No.:  5:15cv278/WTH/EMT

JULIE L. JONES,
     Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (ECF No. 1).  Respondent filed an answer and relevant portions of the state court record (ECF No. 15).  Petitioner filed a reply (ECF No. 19).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rule 8(a), Rules Governing Section 2254 Cases.  It is further the

opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

## I.    BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* ECF No. 15).[1]  Petitioner was charged in the Circuit Court in and for Washington County, Florida, Case No. 2008-CF-157, with one count of capital sexual battery on a person less than 12 years of age (Ex. A at 7).  He was charged in Case No. 2009-CF-97, with one count of lewd and lascivious molestation (*id.* at 123).  On November 20, 2009, Petitioner entered a written Plea, Waiver, and Consent, pursuant to which he agreed to enter a no contest plea to the charges and to be designated a sexual predator, in exchange for concurrent sentences of fourteen (14) months in jail, with credit for fourteen (14) months, and two years of community control followed by fifteen (15) years of sex offender probation (*id.* at 80–81).  The trial court accepted the plea, and on November 20, 2009, sentenced Petitioner in accordance with the plea agreement (*id.* at 87–96).

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (ECF No. 15).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

On August 10, 2010, a warrant issued for Petitioner's violation of community control ("VOCC") (Ex. A at 97–98).   The court held an evidentiary hearing on November 22, 2010, at the conclusion of which the court adjudicated Petitioner guilty of violating Condition 34 of his supervision, specifically, failing to submit to electronic monitoring (Ex. B).  The court revoked Petitioner's community control and sentenced him to life imprisonment in Case No. 2008-CF-157, and a concurrent term of thirty (30) years in prison in Case No. 2009-CF-97 (Ex. A at 112–19, Ex. B).

On July 15, 2011, Petitioner filed a motion to correct sentencing error, pursuant to Rule 3.800(b)(2) of the Florida Rules of Criminal Procedure, requesting additional sentence credit (Ex. C at 236–38).  The court granted the motion and amended the judgment to reflect a total of 536 days of presentence jail credit (*id.* at 266–67).  The amended judgment was rendered on August 26, 2011 (*id.* at 284–91).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D11-252 (Ex. D).  Petitioner's counsel filed a brief, pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967), asserting that there were no meritorious arguments to support the contention that reversible error occurred in the trial court (*id.*).  Petitioner filed a pro se initial brief (Ex. E).  The First DCA affirmed the judgment per curiam without written opinion on March 21, 2012,

(Ex. F).  The court denied Petitioner's motion for rehearing on June 6, 2012 (Exs. G,

H).  The mandate issued June 22, 2012 (Ex. I).  Hernandez v. State, 93 So. 3d 1016

(Fla. 1st DCA 2012) (Table).

On August 3, 2012, Petitioner filed a motion for post-conviction relief, pursuant

to Rule 3.850 of the Florida Rules of Criminal Procedure, in the state circuit court (Ex.

J at 1–6).  On October 24, 2012, the court struck the motion as facially insufficient,

with leave to amend within thirty (30) days (*id.* at 23).  At Petitioner's request, the

court extended the deadline to January 11, 2013 (*id.* at 23–24, 43).  Petitioner filed an

amended Rule 3.850 motion on November 24, 2012 (*id.* at 26–42).  On September 11,

2013, the court struck the amended motion as facially insufficient, with leave to

amend within sixty (60) days (*id.* at 44). At Petitioner's request, the court extended

the deadline to January 9, 2014 (*id.* at 45–47).  Petitioner filed amended Rule 3.850

motions on January 8, 2014 and April 2, 2014 (*id.* at 48–77).  On April 14, 2014, the

court struck the amended motions as facially insufficient, with leave to amend within

sixty (60) days (*id.* at 78).  Petitioner filed an amended Rule 3.850 motion on May 25,

2014 (*id.* at 79–93).  The state circuit court summarily denied the motion on July 7,

2014 (*id.* at 94–97).  Petitioner appealed the decision to the First DCA, Case No.

1D14-4412 (Ex. K).  The First DCA affirmed the decision per curiam without written

opinion on January 14, 2015, with the mandate issuing March 23, 2015 (Exs. L, O).

Hernandez v. State, 160 So. 3d 413 (Fla. 1st DCA 2015) (Table).

Petitioner filed the instant federal habeas action on October 21, 2015 (ECF No. 1).

## II.   STANDARD OF REVIEW

Federal courts may grant habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218–19. Section 2254(d) provides, in relevant part:

> **(d)**  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> **(1)**  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> **(2)**  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).  The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id., 529 U.S. at 412–13 (O'Connor, J., concurring).

Employing the Williams framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue.  Thaler v. Haynes, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); Woods v. Donald, — U.S. —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) ("We have explained that clearly established Federal law for

purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law.  The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent.  Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").  Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law.  *See* Woods, 135 S. Ct. at 1377 (holding, as to claim that counsel was per se ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants:  "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)).  If the state court decision is contrary to clearly established federal law, the

federal habeas court must independently consider the merits of the petitioner's claim.

See Panetti v. Quarterman, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. Williams, 529 U.S. at 409; see Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam). In applying this standard, the Supreme Court has emphasized:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Harrington, supra, at 102–103, 131 S. Ct. 770 (internal quotation marks omitted).

Woods, 135 S. Ct. at 1376 (quoting Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See* Gill v. Mecusker, 633 F.3d 1272, 1292 (11th Cir. 2011).  As with the "unreasonable application" clause, the federal court applies an objective test.  Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").  Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance."  Brumfield v. Cain, — U.S. —, 135 S. Ct. 2269, 2277, 192 L. Ed. 2d 356 (2015) (quotation marks omitted).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct.  28 U.S.C. § 2254(e)(1).  The petitioner bears "the burden of rebutting the presumption of correctness by clear

and convincing evidence." *Id.*; *see, e.g.*, <u>Miller-El</u>, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by the AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").  Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and § 2254(e)(1) interact in the context of fact-based challenges to state court adjudications.  *See* <u>Cave v. Sec'y for Dep't of Corr.</u>, 638 F.3d. 739 (11th Cir. 2011).  However, the Eleventh Circuit has declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision."  <u>Gill</u>, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied the AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See* <u>Panetti</u>, 551 U.S. at 954.  Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).  "If this

standard is difficult to meet, that is because it was meant to be." Richter, 562 U.S. at 102.

## III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, *see* 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower courts with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404

U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.*, 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7.  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  *Id.*,

459 U.S. at 7 & n.3.   Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364.   The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[2]  The Supreme Court explained,"[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a

---

[2] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Id., 541 U.S. at 32. This language, while not part of the Court's holding, provides helpful instruction. With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[3]

The Eleventh Circuit, prior to <u>Duncan</u>, had broadly interpreted the "fair presentation" requirement. After <u>Duncan</u>, however, the Eleventh Circuit has taken a more narrow approach. For example, in <u>Zeigler v. Crosby</u>, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution. 345 F.3d 1300, 1307 (11th Cir. 2003). The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial . . . , " which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution. <i>Id.</i> at 1308 n.5. The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United

---

[3] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." <u>McNair v. Campbell</u>, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. <i>Id.</i>

States Constitution and cited no federal cases.  The court concluded that petitioner's

"[c]ursory and conclusional sentence (unaccompanied by citations to federal law), .

. . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not properly presented to the state court and which can no

longer be litigated under state procedural rules is considered procedurally defaulted,

that is, procedurally barred from federal review.  *See* O'Sullivan, 526 U.S. at 839–40,

848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This court will also

consider a claim procedurally defaulted if it was presented in state court and rejected

on the independent and adequate state ground of procedural bar or default.  *See*

Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1,

115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001)

("[C]laims that have been held to be procedurally defaulted under state law cannot be

addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th

Cir. 1998) (applicable state procedural bar should be enforced by federal court even

as to a claim which has never been presented to a state court); *accord* Tower v.

Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir.

1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812

(1991).  In the first instance, the federal court must determine whether any future

attempt to exhaust state remedies would be futile under the state's procedural default doctrine.  Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  Ford v. Georgia, 498 U.S. 411, 424–25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and expressly state it is relying on state

procedural rules to resolve the federal claim.[4]  Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.   Third, the state procedural rule must be adequate.  *Id.*  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)).  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually

---

[4] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).

innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808

(1995). "To establish the requisite probability, the petitioner must show that it is more

likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S.

at 327. Further:

> a substantial claim that constitutional error has caused the conviction of
> an innocent person is extremely rare. To be credible, such a claim
> requires [a] petitioner to support his allegations of constitutional error
> with new reliable evidence—whether it be exculpatory scientific
> evidence, trustworthy eyewitness accounts, or critical physical
> evidence—that was not presented at trial.

Id. Although a habeas petitioner asserting a convincing claim of actual innocence

need not prove diligence to overcome a procedural bar, timing is a factor relevant in

evaluating the reliability of a petitioner's proof of innocence. See McQuiggin v.

Perkins, — U.S. —, 133 S. Ct. 1924, 1935, 185 L. Ed. 2d 1019 (2013). As the Court

stated in Schlup, "[a] court may consider how the timing of the submission and the

likely credibility of [a petitioner's] affiants bear on the probable reliability of . . .

evidence [of actual innocence]." 513 U.S. at 332; see also House, 547 U.S. at 537.

Within this framework, the court will review Petitioner's claims.

## IV.    PETITIONER'S CLAIMS

A.    Ground One: "Fundamental error occurred at the trial court when
Defendant did not comprehend proceedin [sic] due to a language barrier."

Petitioner contends his rights to due process and equal protection were violated because the trial court accepted his no contest plea to the original charges without appointing a language interpreter (ECF No. 1 at 10–13).[5]  Petitioner alleges he was raised in Cuba until the age of 29 (Petitioner was 45 years old at the time of the plea). He alleges his native language is Spanish, and he has a minimal understanding of English.  He alleges defense counsel did not speak Spanish.  Petitioner alleges he was never informed, by the trial court or defense counsel, of the conduct underlying the charges.  Petitioner alleges that on the day he signed the plea agreement, November 20, 2009, defense counsel informed him that the plea offer would permit him to go home to his family that day, and that Petitioner would be placed on sex offender probation for 15 years, preceded by two years of community control.  Petitioner alleges the trial court did not have a Spanish interpreter present at the plea hearing. Petitioner alleges he informed the court during the plea colloquy that he did not understand the court's questions.  Petitioner alleges the trial judge acknowledged this information, but assured Petitioner that he would speak slowly to enable Petitioner to understand him.  Petitioner alleges he did not go home that day, because a detainer had been lodged against him by another county in Florida.

---

[5] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

Case No.:  5:15cv278/WTH/EMT

Petitioner contends his plea was involuntary because he did not understand the terms of the plea, including that he could be sentenced to life imprisonment if he violated his supervision (ECF No. 1 at 12–13). Petitioner alleges it was evident from the plea colloquy that he had limited understanding of the English language, and the trial court should have appointed an interpreter. Petitioner alleges if he had understood the terms of the plea, including his sentence exposure, he would not have entered a plea and instead would have proceeded to trial. Petitioner asserts he presented this claim to the state courts on direct appeal (*id.* at 10).

Respondent contends the claim is unexhausted and procedurally barred, because Petitioner failed to present it to the sate courts in a procedural context in which the merits could be considered (ECF No. 15 at 7–12). Respondent contends the only direct appeal pursued by Petitioner was the direct appeal of the VOCC judgment, and under Florida law, he was procedurally barred from contesting the judgment on the original charges once he violated his community control and a new judgment was rendered for the violation (*id.* at 10–11). Respondent further contends that Petitioner admitted he did not present this claim in his Rule 3.850 motion (*see* ECF No. 1 at 6–7). Respondent contends any attempt to do so would have been procedurally barred, as evidenced by the fact that the post-conviction court rejected as untimely a

different challenge to the original plea asserted by Petitioner in the Rule 3.850 proceeding (ECF No. 15 at 11).  Notwithstanding Petitioner's failure to properly exhaust, Respondent contends the claim is without merit, because the record refutes Petitioner's claim that he was incapable of understanding English (*id.* at 12–15).

Petitioner presents several arguments in response to Respondent's exhaustion/procedural bar argument (ECF No. 19 at 5–6).  Petitioner contends he fairly presented his due process and equal protection claims to the state court.  He contends the state court's decision was based upon an unreasonable determination of the facts in light of the evidence presented. Petitioner alternatively contends the federal court may excuse any failure to properly exhaust, pursuant to Martinez v. Ryan, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012), because defense counsel was ineffective for failing to obtain a translator during the plea process to ensure that Petitioner was aware of the consequences of his no contest plea.

Petitioner fairly presented his federal claim to the state court.  As "Argument Point One" of Petitioner's pro se initial brief on direct appeal of the VOCC judgment, Petitioner claimed that the trial court violated his Fourteenth Amendment rights to due process and equal protection by accepting his plea without providing a language

translator (Ex. E at 6–9). The First DCA affirmed the VOCC judgment in a one-word

decision, "Affirmed." (Ex. F).

Where, as here, a state court issues an order that summarily rejects without

discussion all the claims raised by a defendant, including a federal claim that the

defendant subsequently presses in a federal habeas proceeding, the federal habeas

court must presume (subject to rebuttal) that the federal claim was adjudicated on the

merits in the absence of any indication or state-law procedural principles to the

contrary. *See* Richter, 562 U.S. at 99. The presumption may be overcome when there

is a reason to think some other explanation for the state court's decision is more likely.

*Id.* at 99–100.

Here, the First DCA did not indicate that its adjudication of Petitioner's claim

was based upon any reason other than the merits. The presumption of a merits

adjudication has not been overcome. Therefore, the court will review the First DCA's

adjudication to determine whether Petitioner has demonstrated that it was contrary to

or an unreasonable application of clearly established federal law, or based upon an

unreasonable determination of fact.

      1.    Clearly Established Federal Law

The test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to a defendant.  *See* North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970) (citing Boykin v. Alabama, 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969)).  A plea of guilty is not considered knowing and voluntary unless the accused is reasonably informed of the nature of the charge against him, the factual basis underlying the charge, and the legal options and alternatives that are available.  *See* Henderson v. Morgan, 426 U.S. 637, 645, 96 S. Ct. 2253, 49 L. Ed. 2d 108 (1976); Stano v. Dugger, 921 F.2d 1125, 1142 (11th Cir. 1991) (citations omitted).  "A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt."  Henderson, 462 U.S. at 645 n.13 (citation omitted); Boykin, 395 U.S. at 243 & n.5.

2.    Federal Review of State Court Decision

Where, as here, the last adjudication on the merits provides no reasoned opinion, federal courts review that decision using the test announced in Richter.  *See* Warden, Ga. Diagnostic Prison, 834 F.3d 1227, 1235 (11th Cir. 2016).  The Richter

test provides that "[w]here a state court's decision is unaccompanied by an explanation," a petitioner's burden under section 2254(d) is to "show[ ] there was no reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98. "[A] habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the] Court." *Id.* at 102.

The First DCA's rejection of Petitioner's claim could have been based upon the theory that Petitioner's testimony during the VOCC evidentiary hearing refuted his claim that a language barrier prevented him from understanding the original charges against him, the terms of the original plea agreement, and the consequences of entering a plea. During the VOCC evidentiary hearing, Petitioner testified regarding a conversation he had with Amy Daniel, a probation officer, on February 25, 2010, just three months after he entered his plea to the original charges:

> Q. Did you meet with Amy Daniel, the probation officer that just testified, on February 25th of 2010?
>
> A. Yes.
>
> Q. Did you provide an address to Amy Daniel where you intended to live when you were released from custody?

A.  Yes.

Q.  Did Ms. Daniel say anything to you about the address that you had provided to her?

A.  Yes.

Q.  What did she say?

A.  She told me she had to verify the address and then she would notify me if the address was valid or not.

(*see* Ex. B at 211–12).

Petitioner also testified regarding a conversation he had with Ms. Daniel and her supervisor, Ms. Moore, six months later, on August 3, 2010 (just nine months after Petitioner entered his plea):

Q [by Petitioner's counsel].   When you were released, you reported to Ms. Daniel's office on August the 3rd of 2010?

A.  Yes, I did, because she informed me I'd have to be in her office as soon as possible.

Q.  Did you meet with Amy Daniel on that day?

A.  Yes, but first, I met with the supervisor.

Q.  That's Cassandra Moore?

A.  Yes.

. . . .

Q.  Tell the Court about your conversation with Ms. Moore if you met with her first.

A.  I told her that Ms. Daniel had told me I had to report to her at the office.  And she informed me that having not really belonged to that office, that I had to report to Chipley.

Q.  Did you then meet with Amy Daniel?

A.  With both at the same time.

Q.  Were you aware the address you had provided to Amy Daniel back in February was not valid until you met with her on August 3rd?

A.  At that precise moment is when she told me that that address was not valid, but I had other addresses.

Q.  Did you provide the other addresses to Ms. Daniel?

A.  I met with the supervisor and I gave her my daughter's address and she told me she was not going to help me with that.

Q.  Did you refuse to submit to electronic monitoring on August 3rd, 2010?

A.  I agree [sic] to put the monitor on me and, but I needed to go get an address and they said no, if I didn't have a valid address, I'd have to report to Chipley within twenty-four hours.
. . . .
I told her that I had no money, but that I could call my family and get some money, and she said yes, I could call my family.  I call my family, and they told me they could give me the money on Friday.  And that, that, I'm talking, that day was Tuesday when we're talking about.
. . . .
Q.  Did you tell Amy Daniel or Cassandra Moore that it would take you seventy-two hours to get out of Miami and back to Chipley?

A.  I told her I needed at least seventy-two hours to get my monies together in order to come to Chipley.

Q. Did she tell you to furnish her an address the day after August 3rd, 2010?

A. No.

Q. She has testified that she told you to come back in twenty-four hours with a valid address.

A. No, she told me I have twenty-four hours to report to Chipley, she never gave me the opportunity to leave that place.

**Q. Is it possible you misunderstood what she told you?**

**A. No.**

. . . .

Q [by the prosecutor].  Mr. Hernandez, you knew when Ms. Daniels met with you in February that you had to provide her a valid address, is that correct?

A.  I have to give her a family address and then they have to verify.

Q.  And so you knew that there was a possibility if she had to verify that address, that it may or may not be good.

A.  She informed me at that time that the address I gave her could not be good.

Q.  All right.  So you knew when she met with you in February that that address may not be good, then you would have to find and furnish a second address that she would have to verify.

A.  Yes, I knew that if the address was no good, I had to provide other addresses.  And I had other addresses, but she failed to proceed.

Q.  All right.  So when you reported to her office on August the 3rd and Ms. Daniel told you that address was no good, you did not provide a valid address that day, correct?

A.  I informed her that I had daughter's [sic] address, that I was going to give her my daughter's address, and she said she was not going to help me with that.

Q.  Isn't it true, Mr. Hernandez, that they, meaning Ms. Daniel and Ms. Moore attempted to help you in any way they could, but you refused any help that they could give you that day?

A.  No, they never tried to help me, they told I [sic] had to get out of their office then and report to Chipley.  They never try to help me or give me time to get help.

Q.  Isn't it true, Mr. Hernandez, that you were requesting three days to furnish a valid address and they told you no, but they would give you twenty-four hours to get back with them for an address, and again, you said no?

A.  No, they never gave me twenty-four hours, they told me I have to report to Chipley in twenty-four hours and that they were not going to help me.

**Q.  And you testified earlier, Mr. Hernandez, that you did not misunderstand anything they were telling you that day, is that correct?**

**A.  Yes, I understood everything they told me, the women that talked to me.**

Q.  All right.  Now, you testified when your attorney asked you, that you agreed to the GPS or the electronic monitoring, is that right?

A.  I told them I wanted the electronic gear **because the Judge informed me I had to have electronic gear when I was released from jail**, and I wanted to have electronic gear so I can get an address they could verify.

Q.  Isn't it true, Mr. Hernandez, that you only agreed to the GPS once you were placed under arrest?

A.  No, I didn't have time to talk to them when I was arrested.

Q.  You would agree, Mr. Hernandez—you would agree, Mr. Hernandez, that you were in their office for over an hour, would you not?

A.  I talked to Ms. Moore for about fifteen minutes, then she told me I had to wait outside.  Then it was, it could have been an hour, maybe two, that I stay in the office, but then they come back and talked to me and I only talked to them a total of about fifteen, twenty minutes.

Q.  Mr. Hernandez, did you tell Ms. Daniel or Ms. Moore that it was their job to find you somewhere to live?

A.  No, I never said that.  I know that they have, I have to provide my own address, they cannot provide me with an address.

Q.  All right.  So you understood that on your supervision, you have to, number one, provide a valid address.  And number two, you have to wear GPS monitoring, is that right?

A.  Yes, I understand I have to, getting out of prison, a GPS is a (inaudible).

Q.  And when you failed to provide a valid address and you failed to submit to GPS, that you're not, you're not complying with your probation, you understand that?

> A.  No, I did not refuse to wear the monitor and had more addresses.  They refused, said I had to report to Chipley.

(Ex. B at 212–18) (emphasis added).

Amy Daniel testified that she met with Petitioner on February 25, 2010, and explained the conditions of his community control (Ex. B at 200–01).  Ms. Daniel testified:

> **Q.  Now, while you're talking to Mr. Hernandez, was he able to speak back to you and clearly understand what you were telling him.**
>
> **A.  Yes.**
>
> **Q.  Was he able to conversate with you in English?**
>
> **A.  Yes.**
>
> . . . .
>
> Q.  [D]id you instruct him [on February 25, 2010] that upon his release from wherever he was incarcerated, he was to report to your office in the Homestead, Miami/Dade area?
>
> A.  I did instruct him to report to my office in Miami/Dade County, and that was under the assumption that he would remain in Dade County.
>
> Q.  When was Mr. Hernandez released from custody?
>
> A.  August 2nd of 2010, 2010 [sic].
>
> Q.  What day did Mr. Hernandez report to your office?
>
> A.  August 3rd of 2010.

Q.  When Mr. Hernandez reported on August the 3rd, 2010, did you inform him again, the address he previously provided was not good?

A.  Yes, I did.

Q.  Did you inform Mr. Hernandez that in order to be supervised in Miami, he had to provide you a valid address based on his offense?

A.  Yes.

Q.  Did Mr. Hernandez provide you with a valid address?

A.  No.

Q.  Explain to the Court please, Ms. Daniel, Mr. Hernandez's demeanor in your office that day.

A.  He was very argumentative.  He was speaking over this office [sic], over myself.  I did have to get the supervisor of the office to come and help to mediate with the situation.

Q.  Was Mr. Hernandez willing to assist you in providing an address that day?

A.  No, not that day, he wanted, he wanted several days to find an address.

Q.  Did you tell the defendant it was not possible to give him several days to do that?

A.  Yes.

Q.  In addition to explaining to Mr. Hernandez he had to provide you an address, did you inform that he would have to have electronic monitoring or GPS?

A.  Yes.

Q.  What was Mr. Hernandez's reply when you told him about the GPS?
. . . .

A.  He said no.

Q.  How long was Mr. Hernandez in your office that day?

A.  I would say approximately one hour.

**Q.  During that one-hour conversation with Mr. Hernandez, was there any complication in communicating with him?**

**A.  No.**

(*id.* at 201, 203–04) (emphasis added).

Cassandra Moore testified that she was Ms. Daniel's supervisor (Ex. B at 27). Ms. Moore testified that she assisted Ms. Daniel with her meeting with Petitioner on August 3, 2010, because Petitioner was "very belligerent" and "very argumentative" (*id.* at 27–28).  Ms. Moore testified that she and Ms. Daniel were attempting to assist Petitioner, but "No matter what we told him, he was denying it." (*id.* at 28).  Ms. Moore testified that Petitioner did not agree to comply with electronic monitoring until after he was arrested (*id.* at 29).

At the conclusion of the evidence, the presiding judge, the Honorable Allen Register, announced his ruling and sentence (Ex. B at 227–34).  Judge Register asked

Petitioner if he needed the Spanish interpreter, who had interpreted during the VOCC hearing, to repeat the sentence announced by the court (Ex. B at 233–34).  Judge Register noted that it appeared, based upon Petitioner's reaction to the sentence, that Petitioner "clearly understood what I've said" (*id.* at 234).  Petitioner responded that he understood, because the Judge was "speaking long and slow" (*id.*).  Judge Register acknowledged that he spoke very slowly (*id.*).  Judge Register was the same judge who presided over the plea proceeding on the original charges, on November 20, 2009 (*see* Ex. A at 81, 87–96).

The First DCA could have concluded, based upon this evidence, that a language barrier did not prevent Petitioner from understanding the nature of the charges against him, the terms of the plea, and the consequences of his entering a plea to the original charges on November 20, 2009.  Petitioner's testimony that he completely understood what his English-speaking probation officer told him on August 3, 2010, less than 9 months after Petitioner's plea to the original charges, undermines his claim that his inability to understand English rendered his plea unknowing and involuntary, as does Ms. Daniel's testimony that when she met with Petitioner three months after his plea, on February 25, 2010, to explain the conditions of his community control, he was able to clearly understand what she said and converse in English.  Fairminded jurists could

disagree that this theory is inconsistent with clearly established federal law, but it is this potential for disagreement which precludes federal habeas relief.

Petitioner has failed to demonstrate that the state court's adjudication of Ground One was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of clearly established federal law. Therefore, he is not entitled to relief on Ground One.

B.    Ground Two: "A fundamental error occurred when the Defendant was arrested and the trial court rule it [sic] as a violation of probation."

Petitioner alleges after he entered his plea to the original charges, he was transferred to Miami-Dade County on an unrelated charge, and sentenced to six months in jail on that charge (ECF No. 1 at 16–18). Petitioner alleges on February 25, 2010, while he was in the Miami-Dade County jail, Amy Daniel from the Miami-Dade probation office visited him and informed him that she was his probation officer, and that he must report to her office within 24 hours of his release from jail. Petitioner alleges he was released from jail on August 2, 2010, and reported to Ms. Daniel's office the next day. Petitioner alleges Ms. Daniel told him she would help him, but then called the police to arrest him. Petitioner alleges Ms. Daniel never stated when or where Petitioner refused to wear the electronic monitor. Petitioner contends there was no probable cause for his arrest, and no basis for revoking his community control,

because he did not violate the conditions of his community control. Petitioner asserts

he presented this claim on direct appeal of the VOCC judgment (*id.* at 16).

Respondent contends the issue was not raised in the trial court; therefore, it was

not preserved for appellate review on direct appeal of the VOCC judgment (ECF No.

15 at 15–16). Respondent further argues that the issue did not amount to fundamental

error, because an unlawful arrest does not preclude a later prosecution (*id.*).

Respondent additionally contends the claim is without merit (*id.* at 16–17).

Respondent argues there was sufficient evidence to find by not merely probable cause,

but a preponderance of the evidence, that Petitioner failed to submit to electronic

monitoring, as evidenced by the testimony of Ms. Daniel, the probation officer, that

Petitioner refused electronic monitoring prior to his arrest (*id.*).

Petitioner argues in his reply that any failure to preserve the issue in the trial

court was due to ineffective assistance of trial counsel (ECF No. 19 at 7–10).

Petitioner contends trial counsel should have "objected" to the court's ruling that

Petitioner violated the conditions of his supervision (*id.*). Petitioner contends his

arrest for violating his supervision violated his due process rights (*id.*).

1.    Clearly Established Federal Law

The Due Process Clause of the Fourteenth Amendment imposes procedural and substantive limits on the revocation of the conditional liberty created by probation or other types of supervision.  *See* <u>Bearden v. Georgia</u>, 461 U.S. 660, 666 & n.7, 103 S. Ct. 2064, 76 L. Ed. 2d 221 (1983).   In <u>Bearden</u>, the Supreme Court recognized substantive limits on the automatic revocation of probation where an indigent defendant is unable to pay a fine or restitution.  461 U.S. at 666 & n.7.  Additionally, the Supreme Court has held that a revocation of probation or other supervision violates the Due Process Clause where there was <u>no</u> evidentiary support for finding that probation conditions were violated.  *See* <u>Douglas v. Buder</u>, 412 U.S. 430, 93 S. Ct. 2199, 37 L. Ed. 2d 52 (1973) (emphasis added).  However, the Supreme Court has not articulated the standard of proof required to support a revocation of probation or other type of supervision.  *See* <u>Black v. Romano</u>, 471 U.S. 606, 615–16, 105 S. Ct. 2254, 85 L. Ed. 2d 636 (1985) ("The decision to revoke Romano's probation satisfied the requirements of due process . . . .  The courts below concluded, and we agree, that there was sufficient evidence to support the state court's finding that Romano had violated the conditions of his probation."); <u>Douglas</u>, *supra*; *see also* <u>United States v. Taylor</u>, 931 F.2d 842, 848 (11th Cir. 1991) (there is no requirement in a probation revocation hearing to prove beyond a reasonable doubt that the defendant committed

the alleged acts; all that is required is that the evidence reasonably satisfy the judge

that the conduct of the probationer has not been as good as required by the conditions

of probation).

        2.      Federal Review of State Court Decision

At the conclusion of the VOCC hearing in Petitioner's case, the court

announced its decision to revoke Petitioner's community control supervision, and

stated the reasons for its decision as follows:

> Based on the testimony I have heard, I'm prepared to make my
> ruling.  The people of the State of Florida have made it very clear,
> through their elected representatives in Tallahassee, their desire is to
> have sex offender's locations known at all time.  I misstated, I said sex
> offenders, I mean sexual predators.  And Mr. Hernandez, and Mr.
> Hernandez has been classified by this Court as a sexual predator.  Okay.
> This requires him to have a valid address, and that valid address means
> he cannot reside within a certain distance from certain places that
> children can, are regularly found. All of that was explained to Mr.
> Hernandez when he entered his plea in November of 2009.  The people
> of the State of Florida have also said that sexual predators, such as Mr.
> Hernandez, must comply with electronic monitoring.  Those two
> conditions, a valid address and an electronic monitoring are critical and
> material to carrying out the wishes of the people of the people of the
> State of Florida.  And the defendant in this case refused to comply with
> either of those.  I find the testimony of Ms. Moore and Ms. Daniel to be
> much more persuasive than the testimony of Mr. Hernandez as to their
> conversations that occurred at Ms. Daniel's office.  I also find it difficult
> to believe that if Mr. Hernandez had additional addresses, that he would
> not have provided those to them that day.  Having determined that Mr.
> Hernandez has, has [sic] willfully violated the terms of his supervision
> in a material manner, and that that violation was not connected, in any

way, with his inability to pay costs to comply with this.  I now find that
he has violated the terms of his community control.

. . . .

I'm finding today, based on the testimony that I have heard, that you
[Petitioner] violated in two ways.  One, by not providing a valid address.
And number two, by refusing to comply with electronic monitoring.  I'm
also going to find that either one of those, standing alone, would have
been sufficient for me to have found that you have willfully violated
your supervision in a material way.

. . . .

[T]hey said you willfully refused to comply with the electronic
monitoring, and I believe what they told me, . . . .

(Ex. B at 227–32).  Upon hearing further argument from defense counsel, the court

found that Petitioner's financial condition may have been a factor in the violation of

Condition 9 (which required Petitioner to comply with all instructions from his

probation officer) (*see* Ex. A at 88), but Petitioner's financial condition did not excuse

his violation of Special Condition 34, which required him to submit to electronic

monitoring (*see* Ex. A at 91), because even though the cost of electronic monitoring

was $1.00 per day, Petitioner refused to even accept the electronic monitor (Ex. B at

232–33).

On appeal of the VOCC judgment to the First DCA, Petitioner argued that

fundamental error occurred in the VOCC proceeding because there was no probable

cause for his arrest (Ex. E at 10–11).  The First DCA affirmed the VOCC judgment

without explanation (Ex. F).

The First DCA's rejection of Petitioner's claim, that there was insufficient probable cause to arrest him, could have been based upon the theory that "an indictment or information may not be dismissed by a trial court on the ground that the police unlawfully arrested the defendant based on no probable cause," State v. Spencer, 443 So. 2d 1086 (Fla. 3d DCA 1984), because "[a]n illegal arrest, without more, has never been viewed as a bar to subsequent prosecution nor as defense to a valid charge," State v. Tillman, 402 So. 2d 19, 20 (Fla. 3d DCA 1981); and that "the power of a court to try a person for crime is not impaired by the fact that he ha[s] been brought within the court's jurisdiction by reason of 'forcible abduction' [or other illegal arrest]."  Frisbie v. Collins, 342 U.S. 519, 522, 72 S. Ct. 509, 96 L. Ed. 541, 545 (1952); *accord* Jones v. State, 386 So. 2d 804 (Fla. 1st DCA 1980); Akins v. Hamlin, 327 So. 2d 59 (Fla. 1st DCA 1976).

Further, the First DCA could have rejected Petitioner's due process challenge to the revocation, to the extent he asserted one, on the ground that there was some evidence to support the revocation.  Ms. Daniel and Ms. Moore testified that Petitioner refused to accept electronic monitoring prior to his arrest.

Petitioner failed to demonstrate that the state court's adjudication of Ground Two was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of clearly established federal law. Therefore, he is not entitled to relief on Ground Two.

C.   Ground Three: "The defense counsel was ineffective for failing to advise the Defendant that the consequences of 'extradition' includes an assigment [sic] of his community control to a reciving [sic] county renders [sic] the Defendant's plea 'not' knowing and involuntary."

Petitioner alleges on November 20, 2009, the day he entered the plea agreement on the original charges, defense counsel advised him that the plea agreement provided that Petitioner was to serve his community control in Washington County, where he resided at the time of the plea, and that he must report to the probation/community control office within 72 hours of his release (ECF No. 1 at 20–22). Petitioner alleges two Washington County probation officers also explained this when they reviewed the terms of the written "contract" (the Order of Community Control) with him, which also occurred on November 20, 2009 (*see* Ex. A at 87–91). Petitioner alleges Condition 13 of the Order stated that he must report to the probation office in Washington County within 72 hours of his release (*see id.*). Petitioner alleges on December 7, 2009, he was "extradited" to Miami-Dade County, and on February 25, 2010, Amy Daniel amended the "contract" to require that he report to the Miami-Dade

probation office (ECF No. 1 at 20–22).  Petitioner alleges he did not receive advance notice of the "amendment" or an opportunity to object, and he did not agree to the "amended" condition (*id.*).

Petitioner alleges defense counsel was aware, at the time of the plea, that a charge was pending against Petitioner in Miami-Dade County, yet counsel failed to explain to Petitioner that his community control would be assigned to that county (ECF No. 1 at 21).  Petitioner alleges he was prejudiced by counsel's failure to advise him of this, because he was unable to provide Ms. Daniel with an acceptable residential address immediately upon his release, and he was unable to meet Ms. Daniel's "unimaginable expectation" that Petitioner immediately travel from Miami-Dade County to Washington County (*id.*).  Petitioner asserts he presented this claim to the state courts in Ground One of his Rule 3.850 motion (*id.* at 20).

Respondent contends the state court determined that Petitioner's claim was time-barred, and this federal court should defer to the state procedural bar (ECF No. 15 at 17–18).  Respondent contends that even if Petitioner presented his claim to the state courts in a procedurally proper context, the claim is without merit (*id.* at 18–25). Respondent contends the issue of which Florida county would supervise Petitioner's community control was a collateral consequence of the plea; therefore, counsel was

not ineffective for failing to advise Petitioner that his supervision could be transferred

to another county (*id.*).

Petitioner raised this claim as Ground One in his amended Rule 3.850 motion

(Ex. J at 81–82).  The state circuit court adjudicated the claim as follows:

> In **Ground 1**, the Defendant alleges that counsel was ineffective
> for failing to advise him of the consequences of his plea on November
> 20, 2009.  However, the Court finds that the Defendant's ground is
> procedurally barred as untimely. *See Fla. R. Crim. P. 3.850(b); See also*
> *Gust v. State*, 535 So. 2d 642 (Fla. 1st DCA 1988).  Thus, Defendant's
> ground is due to be denied.

(Ex. J at 174).  The First DCA affirmed the decision without written opinion (Ex. L).

The state court's procedural default ruling rested on adequate state grounds

independent of the federal question.  First, the state court clearly and expressly stated

it was relying on state procedural rules to resolve the federal claim.  Second, the state

court's decision on the procedural issue rested entirely on state law grounds and was

not be intertwined with an interpretation of federal law.  Third, the state procedural

rule was adequate in that it is firmly established and regularly followed, that is, not

applied in an arbitrary or unprecedented fashion.  *See* Fla. R. Crim. P. 3.850(b)

(imposing a two-year deadline for filing a Rule 3.850 motion, which begins to run on

the date the judgment and sentence under attack becomes final, unless an enumerated

exception applies).  The two-year period for Petitioner's challenging the judgment of

conviction on the original charges, which is the judgment at issue in his IAC challenge to his plea, ran from the expiration of Petitioner's 30-day period to appeal that judgment. *See* <u>Gust v. State</u>, 535 So. 2d 642, 644 (Fla. 1st DCA 1968). The judgment was rendered on January 13, 2010, and became final on February 13, 2010 (Ex. A at 87–96). Petitioner did not file his initial Rule 3.850 motion until August 3, 2012, more than two years later (Ex. J at 1–6). Therefore, his IAC challenge to his original plea was time barred under Florida law.

The state court's procedural default ruling rested on adequate state grounds; therefore, this court will defer to that ruling. Petitioner is not entitled to a merits review of his IAC claim unless he satisfies the "cause and prejudice" exception to the procedural bar, or demonstrates he is entitled to review under the "fundamental miscarriage of justice" exception.

Petitioner contends he is entitled to review under the fundamental miscarriage of justice exception (ECF No. 19 at 10–11). However, he has not supported his contention with new reliable evidence that he is factually innocent of the original charges that were the subject of the plea at issue in Ground Three (sexual battery and lewd and lascivious molestation). Therefore, Petitioner is not entitled to a merits review of the IAC claim asserted in Ground Three.

D.   Ground Four:   "Ineffective assistance of counsel for failing to raise jurisdicion [sic] issue in defense against assignment of community control to another county."

Petitioner alleges on December 7, 2009, he was transferred from Washington County to Miami-Dade County to face a violation of probation charge in an unrelated case (ECF No. 1 at 25–26).  He alleges while he was awaiting resolution of the charge, Ms. Daniel (a Miami-Dade County probation officer) met with him and told him that he must report to her upon his release, even though the Order of Community Control directed him to report to Washington County.  Petitioner alleges the Miami-Dade court sentenced him to six months in jail.  He alleges on May 2, 2010, he was transferred to the Baker County jail pursuant to an immigration matter.  Petitioner alleges upon his release from the Baker County jail on August 2, 2010, he traveled to Miami-Dade County, where he reported to Ms. Daniel on August 3, 2010.  Petitioner contends defense counsel should have raised a jurisdictional defense to the VOCC charge, on the ground that the court in Washington County lost jurisdiction to try and sentence him for the VOCC.  Petitioner asserts he presented this claim as Ground Three of his Rule 3.850 motion (*id.* at 25).

Respondent appears to concede Petitioner exhausted this claim (ECF No. 15 at 25). Respondent contends the state court's adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law (*id.* at 25–27).

        1.     Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). To obtain relief under <u>Strickland</u>, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 687–88. If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

The focus of inquiry under the performance prong of <u>Strickland</u> is whether counsel's assistance was reasonable considering all the circumstances and under prevailing professional norms. <u>Strickland</u>, 466 U.S. at 688–89, 691. "The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." <u>Jones v. Campbell</u>, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to

reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" *Id.* (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do.'" Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15). "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high. *See* Wellington v. Moore, 314 F.3d 1256, 1260 (11th

Cir. 2002).  To establish prejudice, Petitioner must show "that every fair-minded jurist would conclude 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Jones v. GDCP Warden, 753 F.3d 1171, 1184 (11th Cir. 2014) (quoting Strickland, 466 U.S. at 694).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome," not that counsel's conduct more likely than not altered the outcome of the proceeding.  *Id.* (citation omitted).   And Petitioner must show that the likelihood of a different result is substantial, not just conceivable.  Williamson v. Fla. Dep't of Corr., 805 F.3d 1009, 1016 (11th Cir. 2015) (citing Richter, 562 U.S. at 112).  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.  The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. *Id.* at 694–95.  Further, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal), Strickland prejudice is gauged against the outcome of the trial, not on appeal.  *See* Purvis v. Crosby, 451 F.3d 734, 739 (11th Cir. 2006) (citing Strickland, 466 U.S. at 694–95).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999).  "Surmounting Strickland's high bar is never an easy task."  Padilla v. Kentucky, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010).  "Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult."  Richter, 131 S. Ct. at 788. As the Richter Court explained:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The Strickland standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Id. (citations omitted).

> 2.    Federal Review of State Court Decision

Petitioner raised this claim as Ground Three of his Rule 3.850 motion (Ex. J at 83–85).  The state circuit court adjudicated the claim as follows:

> In Ground 3, the Defendant alleges ineffective assistance of counsel for failing to raise jurisdiction issue [sic] in defense against assignment of community control to another county. However, the Defendant's allegations fail to establish either prong of *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Further, Defendant's allegations are conclusory in nature to warrant relief [sic]. <u>*See Kennedy v. State*</u>, 54 7 So. 2d 912 (Fla. 1989) ("A defendant may not simply file a motion for post conviction relief containing conclusory allegations that his or her trial was ineffective [sic] and then expect to receive an evidentiary hearing."). Although a trial court in its discretion may grant more than one opportunity to amend an insufficient claim, *Spera* does not mandate repeated opportunities. <u>*See Nelson v. State*</u>, 977 So. 2d 710 (Fla 1st DCA 2008). Since the Defendant was either unable or unwilling to cure the deficiency, his insufficient claims raised in this ground are denied with prejudice. <u>*See Id.*</u>

(Ex. J at 95). The First DCA affirmed the decision without written opinion (Ex. L).

The First DCA's rejection of Petitioner's claim could have been based upon the theory that a jurisdictional argument was without merit. Florida law grants the court that imposed the community control, in this case the Washington County Circuit Court, jurisdiction to adjudicate an allegation that an offender violated his community control within the period of community control. *See* Fla. Stat. § 948.06(1)(a). Petitioner's contention that the probation officer, Ms. Daniel, modified or enhanced the conditions of his supervision without court ratification did not deprive the Washington County Circuit Court of jurisdiction or authority to adjudicate the VOCC allegations and revoke Petitioner's supervision. Therefore, defense counsel's failure

to assert a jurisdictional argument was not deficient, and Petitioner was not prejudiced, in the <u>Strickland</u> sense, by defense counsel's failure to do so. Petitioner is not entitled to relief on Ground Four.

> E.    <u>Ground Five:  "Defense counsel was ineffective for not requesting that witnesses be separated and/or sequestered during each other's testimony."</u>

Petitioner presents two IAC claims in Ground Five (ECF No. 1 at 28–30). He first contends defense counsel was ineffective for failing to invoke the rule of sequestration at the beginning of the VOCC hearing (*id.* at 28). Petitioner alleges he observed witnesses Amy Daniel and Cassandra Moore sitting together and "corroborating among themselves" in the courtroom prior to the hearing. Petitioner alleges Ms. Daniel and Ms. More were also sitting with the prosecutor "forming a multiple attack" on him. Petitioner alleges defense counsel was aware of the situation and failed to invoke the rule of sequestration.

Petitioner additionally contends defense counsel should have argued in defense of the VOCC charge that Petitioner's transfer to Miami-Dade County to face an unrelated charge did not confer authority or "jurisdiction" on the Miami-Dade probation office to supervise Petitioner's community control. Petitioner alleges the Order of Community Control provided him 72 hours upon his release to report to Washington County before being placed on electronic monitoring. Petitioner alleges

Ms. Daniel lacked authority or "jurisdiction" to order him to do anything, and her instructing him to report to the Miami-Dade office upon his release constituted an unlawful amendment of the Order of Community Control, and an impermissible delegation of judicial authority. Petitioner contends the unlawful amendment violated his due process rights, because he did not have notice of the amendment or an opportunity to object. Petitioner contends defense counsel should have argued that any failure to comply with Ms. Daniel's unauthorized orders did not constitute a willful violation of the Order of Community Control.

Petitioner asserts he presented these arguments to the state courts as Ground Four of his Rule 3.850 motion (ECF No. 1 at 28).

Respondent construes Ground Five as asserting claims of IAC and trial court error (ECF No. 15 at 27–30). Respondent argues Petitioner's claims of trial court error are unexhausted and procedurally defaulted, because Petitioner presented them in his Rule 3.850 motion, which is impermissible under that Rule (*id.* at 27–28). Respondent additionally contends the claims are without merit because the VOCC court may delegate certain authority of supervision, and the VOCC order itself indicated that the supervising authority, the Florida Department of Corrections, was authorized to direct the location of Petitioner's supervision (*id.* at 28). Respondent

further argues that to the extent Petitioner's argument relates to the violation of Condition 9 and his refusal to report to supervision in Washington County within the allowed time frame, Petitioner was not prejudiced, because the VOCC court expressly stated that Petitioner's refusal to accept electronic monitoring, as required by Condition 34, was sufficient to sustain the revocation (*id.*).

Addressing Petitioner's IAC claim concerning defense counsel's failure to invoke the rule of sequestration, Respondent contends the state court's adjudication of that claim was not contrary to or an unreasonable application of Strickland (ECF No. 15 at 29).  Respondent contends Petitioner's IAC claim based upon counsel's failure to raise the jurisdictional arguments was addressed *supra* in Ground Four (*id.* at 30).

Petitioner argues in his reply that he fairly presented his claims to the state court (ECF No. 19 at 13).  He additionally contends any procedural default should be excused under Martinez, because his IAC claim based upon counsel's failure to invoke the rule of sequestration is a "substantial one" (*id.* at 12–13).

Review of Ground Four of Petitioner's Rule 3.850 motion demonstrates that he presented the same claims there as he presents here in Ground Five, and they are

solely claims of ineffective assistance of counsel, not trial court error (*see* Ex. J at

85–88).  Therefore, Petitioner satisfied the exhaustion requirement.

>    1.    Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

>    2.    Federal Review of State Court Decision

The state circuit court adjudicated Petitioner's claim as follows:

> In Ground 4, the Defendant alleges ineffective assistance of
> counsel for requesting [sic] that witnesses be separated and/or
> sequestered during each other's testimony during the evidentiary hearing
> held November 22, 2010.  However, the Defendant's allegations fail to
> establish either prong of *Strickland v. Washington*, 466 U.S. 668, 687
> (1984).  Further, Defendant's allegations are conclusory in nature to
> warrant relief [sic].  <u>*See*</u> *Kennedy v. State*, 547 So. 2d 912 (Fla. 1989)
> ("A defendant may not simply file a motion for post conviction relief
> containing conclusory allegations that his or her trial was ineffective
> [sic] and then expect to receive an evidentiary hearing.").  Although a
> trial court in its discretion may grant more than one opportunity to
> amend an insufficient claim, *Spera* does not mandate repeated
> opportunities.  <u>*See*</u> *Nelson v. State*, 977 So. 2d 710 (Fla. 1st DCA 2008).
> Since the Defendant was either unable or unwilling to cure the
> deficiency, his insufficient claims raised in this ground are denied with
> prejudice.  <u>*See Id.*</u>

(Ex. J at 95).  The First DCA affirmed the decision without written opinion (Ex. L).

Regarding the portion of Petitioner's IAC claim relating to defense counsel's

failure to invoke the rule of sequestration, the First DCA's rejection of the claim could

have been supported by the theory that Petitioner failed to demonstrate a reasonable

probability that the VOCC court would have found him not guilty of the VOCC if the witnesses had been sequestered. The mere fact that Petitioner observed Ms. Daniel and Ms. Moore sitting together and talking prior to the hearing does not reasonably suggest that either witness's testimony would have been different if counsel had invoked the rule, nor does this fact demonstrate a reasonable probability of a different outcome of the VOCC hearing if defense counsel had invoked the rule. Therefore, the state court's adjudication of this IAC claim was reasonable.

The state court's adjudication of the remaining portion of Petitioner's IAC claim, that counsel should have argued, in defense of the VOCC charges, that Ms. Daniel lacked authority or "jurisdiction" to order Petitioner to do anything, was also reasonable.[6] Special Condition 34 of the Order of Community Control imposed mandatory electronic monitoring as a condition of Petitioner's supervision, regardless of which agent of the Florida Department of Corrections (the agency designated to supervise Petitioner) provided it (Ex. A at 87, 91). At the conclusion of the VOCC hearing, the court expressly found that Petitioner's refusal to comply with electronic

---

[6] When a federal claim has been presented to the state court, and the state court opinion addresses some but not all of defendant's federal claims, a rebuttable presumption arises on federal habeas review that state court adjudicated all of the federal claims on the merits. *See* Johnson v. Williams, — U.S. —, 133 S. Ct. 1088, 1094, 185 L. Ed. 2d 105 (2013). Therefore, the state court presumably adjudicated the merits of the remaining portion of Petitioner's IAC claim, despite the circuit court's addressing only the witness sequestration claim in its written decision.

monitoring, standing alone, was sufficient to support a finding that he willfully violated his supervision in a material way, and that Petitioner's financial condition did not excuse his violation of the electronic monitoring condition, because even though the cost of electronic monitoring was $1.00 per day, Petitioner refused to even accept the monitor (*see* Ex. B at 232–33).

Petitioner failed to show deficient performance and prejudice with respect to defense counsel's failure to argue that Ms. Daniel's lack of authority or "jurisdiction" to supervise Petitioner was a defense to the VOCC charge. The state court's adjudication of this IAC claim was not contrary to or an unreasonable application of Strickland. Therefore, Petitioner is not entitled to relief on Ground Five.

> F.    Ground Six: "Was counsel ineffective for failing to argue or show a defense, in that the Defendant should have had a chance to contend [sic] the allegation(s) against him prior to the arrest and or warrant service before his probation officer in their office in order to show good faith?"

Petitioner asserts two IAC claims in Ground Six (ECF No. 1 at 32). He claims defense counsel should have argued that Petitioner should have been provided an opportunity to contest or explain the alleged violations to the probation officer prior to his arrest and the initiation of revocation proceedings. Petitioner additionally contends defense counsel should have objected to the court's revocation of Petitioner's probation in Case No. 2009-CF-97, because the affidavit of probable

cause and violator warrant only charged a violation of community control in Case No. 2008-CF-157. Petitioner asserts he presented these claims in Ground Five of his Rule 3.850 motion.

Respondent contends the state court's rejection of Petitioner's claims was not an unreasonable application of Supreme Court law or based upon an unreasonable determination of fact (ECF No. 15 at 30–32).

### 1. Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs this claim.

### 2. Federal Review of State Court Decision

Petitioner presented his IAC claims in Ground Five of his Rule 3.850 motion (Ex. J at 88). The state circuit court adjudicated Petitioner's claim as follows:

> In Ground 5, the Defendant alleges counsel was ineffective for failing to argue or show a defense, in that he should have had a chance to contend [sic] the allegations against him prior to the arrest and or warrant service before his probation officer in their office [sic]. However, the Defendant's allegations fail to establish either prong of *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Further, Defendant's allegations are conclusory in nature to warrant relief [sic]. *See Kennedy v. State*, 547 So. 2d 912 (Fla. 1989) ("A defendant may not simply file a motion for post conviction relief containing conclusory allegations that his or her trial was ineffective [sic] and then expect to receive an evidentiary hearing."). Although a trial court in its discretion may grant more than one opportunity to amend an insufficient claim, *Spera* does not mandate repeated opportunities. *See Nelson v. State*, 977 So. 2d 710 (Fla. 1st DCA 2008). Since the Defendant was either unable

or unwilling to cure the deficiency, his insufficient claims raised in this ground are denied with prejudice. *See Id.*

(Ex. J at 95). The First DCA affirmed the decision without written opinion (Ex. L).

The state court reasonably rejected Petitioner's claim that defense counsel should have argued that Petitioner should have been provided an opportunity to contest or explain the alleged violations to the probation officer prior to his arrest and the initiation of revocation proceedings. Petitioner provided no legal authority upon which defense counsel could have relied for this argument, and the court is aware of none. Counsel cannot be deemed ineffective for failing to make a meritless argument. Therefore, the state court reasonably concluded Petitioner failed to satisfy either prong of the Strickland standard as to this IAC claim.

The state court also reasonably rejected Petitioner's IAC claim based upon counsel's failure to object to the court's revocation of Petitioner's probation in Case No. 2009-CF-97, on the ground that the affidavit of probable cause and violator warrant only charged a violation of community control in Case No. 2008-CF-157. The record demonstrates that the Order of Community Control listed both case numbers, as did the affidavit for violation of community control, the violation report, and the violator warrant (Ex. A at 87–91, 97–102). Therefore, the state court reasonably applied Strickland in rejecting this IAC claim.

G.    Ground Seven: "Did defense counsel act ineffective for allowing the State to present evidence of a questionable nature to the court without requesting the validity of the person, means, or manner in which it was presented?"

Petitioner claims defense counsel was ineffective for allowing the VOCC court to consider the factual assertions in the violation report, on the ground that neither the officer who authored the report, nor the supervisor who signed it, testified at the VOCC hearing or was otherwise subjected to cross-examination (ECF No. 1 at 34–35).  Petitioner contends the statements in the report were inadmissible hearsay. He asserts he presented this claim as Ground Six of his Rule 3.850 motion (*id.* at 34).

Respondent contends the state court's rejection of Petitioner's claim was not an unreasonable application of Supreme Court law or based upon an unreasonable determination of fact (ECF No. 15 at 32–34).

    1.    Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs this claim.

    2.    Federal Review of State Court Decision

Petitioner presented his IAC claims in Ground Six of his Rule 3.850 motion (Ex. J at 89–90).  The state circuit court adjudicated Petitioner's claim as follows:

> In Ground 6, the Defendant alleges that counsel was ineffective for allowing the State to present hearsay evidence.  However, the Defendant's allegations fail to establish either prong of *Strickland v.*

*Washington*, 466 U.S. 668, 687 (1984).  Further, Defendant's allegations are conclusory in nature to warrant relief [sic].  <u>*See Kennedy v. State*</u>, 547 So. 2d 912 (Fla. 1989) ("A defendant may not simply file a motion for post conviction relief containing conclusory allegations that his or her trial was ineffective [sic] and then expect to receive an evidentiary hearing.").  Although a trial court in its discretion may grant more than one opportunity to amend an insufficient claim, *Spera* does not mandate repeated opportunities.  <u>*See Nelson v. State*</u>, 977 So. 2d 710 (Fla. 1st DCA 2008).  Since the Defendant was either unable or unwilling to cure the deficiency, his insufficient claims raised in this ground are denied with prejudice.  <u>*See Id.*</u>

(Ex. J at 96).  The First DCA affirmed the decision without written opinion (Ex. L).

The transcript of the VOCC hearing shows that the only evidence considered by the court was the testimony of Amy Daniel, Petitioner, and Cassandra Moore (*see* Ex. B).  There is no record support for Petitioner's contention that the court considered the statements contained in the violation report.  A hearsay objection by defense counsel would have been baseless.  Therefore, the state court's rejection of this IAC claim was not unreasonable.

H.    <u>Ground Eight:  "Defense counsel was ineffective in assistance [sic] of counsel [sic] to not instruct the court in the Defendant's alleged violation did not [sic] meet corpus delecti as willful and substantial adverse action."</u>

Petitioner contends defense counsel was ineffective for failing to clearly argue that Ms. Daniel placed Petitioner in a situation which rendered it impossible for him to comply with the conditions of his supervision, by ordering him to travel 600 miles

in 24 hours; therefore, Petitioner was not guilty of willfully and substantially violating the conditions of his supervision (ECF No. 1 at 37–38). Petitioner alleges the State involuntarily transferred him from Washington County to Miami-Dade County, a distance of 600 miles, and then ordered him to return to Washington County upon his release, without any money, transportation, or family support, and gave him only 24 hours to comply. Petitioner alleges he obtained a relative's "tentative promise" to provide funds for transportation in 72 hours, but Ms. Daniel refused to cooperate with this attempt to comply. Petitioner asserts he presented this claim as Ground Seven in his Rule 3.850 motion (*id.* at 37).

Respondent contends the state court's rejection of Petitioner's claim was not an unreasonable application of Supreme Court law or based upon an unreasonable determination of fact (ECF No. 15 at 34–36).

  1. Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

  2. Federal Review of State Court Decision

Petitioner presented his IAC claims in Ground Seven of his Rule 3.850 motion (Ex. J at 90–92). The state circuit court adjudicated Petitioner's claim as follows:

> In Ground 7, the Defendant alleges that trial counsel was ineffective for not arguing to the Court that he did not willfully and

substantially violate his probation.  However, the Defendant's allegations fail to establish either prong of *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Further, Defendant's allegations are conclusory in nature to warrant relief [sic].  *See Kennedy v. State*, 547 So. 2d 912 (Fla. 1989) ("A defendant may not simply file a motion for post conviction relief containing conclusory allegations that his or her trial was ineffective [sic] and then expect to receive an evidentiary hearing.").  Although a trial court in its discretion may grant more than one opportunity to amend an insufficient claim, *Spera* does not mandate repeated opportunities.  *See Nelson v. State*, 977 So. 2d 710 (Fla. 1st DCA 2008).  Since the Defendant was either unable or unwilling to cure the deficiency, his insufficient claims raised in this ground are denied with prejudice.  *See Id.*  Further, this claim is also procedurally barred to the extent Defendant challenges the sufficiency of the evidence, which was an issue for direct appeal, and therefore not cognizable under Rule 3.850.  *See Johnson v. State*, 985 So. 2d 1215 (Fla. 1st DCA 2008); *Childers v. State*, 782 So. 2d 946 (Fla. 4th DCA 2001); *Betts v. State*, 792 So. 2d 589 (Fla. 1st DCA 2001).

(Ex. J at 96).  The First DCA affirmed the decision without written opinion (Ex. L).

The transcript of the VOCC hearing demonstrates that defense counsel successfully argued that Petitioner did not willfully violate Condition 9, which required him to comply with all instructions of his probation officer (*see* Ex. A at 88, (Ex. B at 232–33).  With regard to Condition 34, which imposed mandatory electronic monitoring (Ex. A at 91), none of the circumstances asserted by Petitioner in support of his argument that it was "impossible" for him to comply (i.e., lack of money, transportation, or family support, and the 24-hour deadline for compliance) explains or justifies Petitioner's refusal to accept electronic monitoring.  The VOCC court

believed the testimony of Ms. Daniel and Ms. Moore, that Petitioner refused to accept electronic monitoring.    The court also determined that Petitioner's financial circumstances did not affect his ability to accept electronic monitoring.

The state court's adjudication of Petitioner's IAC claim was not an unreasonable application of <u>Strickland</u>, or based upon an unreasonable determination of fact.  Therefore, Petitioner is not entitled to federal habeas relief on Ground Eight.

V.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing)

(citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (ECF No. 1) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 1st day of March 2017.


                        /s/ *Elizabeth M. Timothy*
                        **ELIZABETH M.  TIMOTHY**
                        **CHIEF UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**