# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# PANAMA CITY DIVISION

RAMON DELSOL HERNANDEZ,

    Petitioner,

v.                                                               CASE NO. 5:15-cv-00278-WTH-EMT

JULIE L JONES,

    Respondent.

_____/

## **ORDER ADOPTING REPORT AND RECOMMENDATION**

This cause comes on for consideration upon the Magistrate Judge's Report and Recommendation. (ECF No. 21). The parties have been furnished a copy of the Report and Recommendation and have been afforded an opportunity to file objections pursuant to Title 28, United States Code, Section 636(b)(1). Plaintiff has filed objections at ECF No. 26. I have made a *de novo* review based on those objections. Plaintiff also filed a Motion to Expand the Record and Request for an Evidentiary Hearing. ECF No. 28. Having considered the Report and Recommendation, the timely filed objections, and the motion, I have determined that the Report and Recommendation should be adopted and that the motion at ECF No. 28 be denied.

In his petition and objections, petitioner raises eight grounds for relief, none of which have merit. First, the Petitioner contends his rights to due process and equal protection were violated because the trial court accepted his no contest plea to the original charges without appointing a language interpreter. As the Magistrate Judge explains, this claim is belied by the record. During the hearing before the state judge, the petitioner was asked if it were possible that the probation officer may have misunderstood petitioner. He insisted that she did not

misunderstand him. Tr. of Rev. Hr'g 21, ECF No. 15 ex. 1.[1] Later, he was asked if he had misunderstood anything the probation officers were telling him that day. He insisted that he "understood everything they told me, the women that talked to me." *Id.* at 19. Also, the probation officers confirmed that Mr. Hernandez was able to clearly converse in English with them and answered "yes" to the question, "was he able to speak back to you and clearly understand what you were telling him[?]" *Id.* at 6. Also, during the violation hearing, petitioner admitted that he understood what was said at the plea colloquy by stating that he told the probation officers that he wanted the ankle monitor "because the Judge informed me I had to have electronic gear when I was released from jail." *Id.* at 21-22. Because of this evidence of understanding of English by petitioner, the state court's determination that petitioner was not prejudiced by a language barrier was not unreasonable.

Second, petitioner argues that his arrest at the probation office and the subsequent revocation of his community control were in violation of "his rights to a fair trial, due process and equal protection of the law under the Fifth, Sixth and Fourteenth Amendments." ECF No. 1. This Court agrees with the Magistrate Judge that petitioner's claims fail because the arrest at the probation office was supported by probable cause and the subsequent revocation was supported by evidence. It was not an unreasonable determination of facts to find that petitioner was lying with regard to whether he refused to wear the ankle monitor. Thus, because refusing to do so was a violation of a condition of community control, the probation officers were not unreasonable in arresting petitioner and the state judge was not unreasonable in revoking his community control.

---

[1] Page 1 of the hearing transcript is found at page 196 of exhibit 1 to ECF No. 15.

Third, petitioner claims that his counsel during the plea negotiations was ineffective because he failed to inform the petitioner that if he were picked up on a detainer from another county, he would be under the community control of the county to which he was transferred. He argues that this made the plea not knowing and voluntary. The state court denied this claim on adequate state grounds - untimeliness - and so this Court should not review the ground unless petitioner can meet the cause and prejudice or fundamental miscarriage of justice exception.

The claim was untimely because his conviction on the original two offenses to which he plead guilty became final on February 13, 2010, and he did not file the Rule 3.850 motion which raised it until August 3, 2012. On the other hand, though, August 3, 2012, was within 2 years of his violation of community control (the hearing was on November 22, 2010), and petitioner claims the cause and prejudice or fundamental miscarriage of justice exceptions should apply because he first realized the negative consequences of the transfer of community control the day he confronted his probation officers or the day his community control was revoked.

Unfortunately for petitioner, the record belies that claim. He testified that on February 25, 2010, the Miami-Dade probation officer visited him at the jail, informed him that she would be his supervising officer, and informed him that he needed to give a valid address in Miami-Dade County upon release. This was the moment that he should have become aware of the consequences of the transfer of community control to Miami-Dade County, and it was more than two years before he filed his Rule 3.850 motion. Thus, he cannot show cause for his failure to file earlier. Also, the petitioner cannot show a fundamental miscarriage of justice because he offers no evidence or argument that he is actually innocent of the crimes of conviction. *McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011)("First, and most importantly, for purposes of the actual innocence exception, 'actual innocence' means factual innocence, not mere legal

insufficiency." citing *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998)). Therefore, petitioner has procedurally defaulted the claims in ground three.

In ground four, the petitioner argues that counsel at the violation hearing should have argued that the Washington County judge was without jurisdiction to revoke his community control because the probation officer in Miami-Dade County had assumed jurisdiction over his supervision. However, under Florida law, "[t]he sentencing court which releases a defendant on community control has jurisdiction to revoke that release, not the Parole and Probation Commission." *Hill v. State*, 469 So. 2d 945, 945 (Fla. Dist. Ct. App. 1985). Thus, it does not matter which county's probation office handled petitioner's case; when a law enforcement official has reasonable grounds to suspect a violation of community control, the official should arrest the supervisee "wherever found and return him or her to the court granting such probation or community control." Fla. Stat. § 948.06(1)(a). Therefore, any objection to jurisdiction would have been futile and declining to raise such objection cannot be ineffective assistance of counsel.

In ground five, petitioner argues two instances of ineffective assistance of counsel. First, he argues that counsel at the hearing should have requested that the rule of sequestration be imposed regarding the two probation officers who testified against him. This Court agrees with the Magistrate Judge that petitioner does not offer any argument or evidence that the outcome of the hearing would have been different if the rule had been imposed. Second, he argues that counsel should have argued that the transfer to a Miami-Dade jail on unrelated charges did not give the probation officer there jurisdiction to supervise him. This statement is simply not the law in Florida. When a court imposes community control, "the department shall provide immediate supervision." Fla. Stat. § 948.01. Thus, it is the Department of Corrections, rather than any individual county's probation office that has "jurisdiction" over the supervisee. Also,

the petitioner's probationary order informed the petitioner that the location of supervision was to be determined by the Department of Corrections. Thus, any objection to the probation officer's jurisdiction would have been fruitless.

In ground six, petitioner argues that counsel at the violation hearing should have argued that petitioner should have been given a chance - by the probation officer - to argue his case before he was arrested. The petitioner supplies no legal basis for requiring such due process before a probation officer orders a warrantless arrest. All that is required is probable cause for an arrest and, later, due process by the hearing judge. As discussed above, it was not an unreasonable determination that probable cause existed that petitioner violated the condition that he submit to wearing an ankle monitor with GPS. Therefore, this Court agrees with the Magistrate Judge that this ground has no merit.

In ground seven, petitioner argues that counsel at the violation hearing was ineffective for failing to object to the court considering the factual assertions in a violation report whose author did not testify in court. This claim is belied by the record. When the trial judge gave his ruling, he based it entirely on the testimony of the two probation officers and did not mention the violation report. Tr. of Rev. Hr'g 32-33, ECF No. 15 ex. 1. Additionally, a review of the violation report shows that it is identical to the testimony of the two probation officers, and is wholly based on their earlier statements to the author of the report. ECF No. 15 at 99-102. Thus, petitioner cannot show any prejudice even if the judge had considered it.

Finally, in ground eight, petitioner argues that counsel was ineffective for failing to argue that petitioner could not possibly have traveled 600 miles in 24 hours while broke and just out of jail. The record again belies petitioner's claim. While the judge was giving his ruling, counsel interrupted him to argue just that: he argued that petitioner's lack of finances might have been

behind the refusal to try to travel to Chipley. The judge accepted that argument and dropped the finding that petitioner violated that condition. However, the refusal to wear the ankle monitor was not financially related and was the basis of the court's revocation. Therefore, counsel's performance was effective in this regard and no prejudice can be shown.

The petitioner filed objections in which he continued to complain that he had given the probation officer his sister's address in February 2010 and that although the probation officer knew the following day that the address was not valid, she did not bother telling the petitioner until August when he was released. According to petitioner, "[d]uring this 5-month period Ms. Daniels did not take the time to inform Petitioner that the address he gave her was no good." Pet'r's Obj'ns 5, ECF No. 26. This argument misses the point. The state judge credited the probation officer's testimony at the revocation hearing that petitioner had "provided me with Sara Del Sol as his contact person to communicate back and forth." Tr. of Rev. Hr'g 12, at ECF No. 15 ex. 1. Petitioner has never objected to or disputed that testimony. Sara Del Sol is the sister whose address he gave to the probation officer in February, and was the person who spoke with the probation officer the next day, and who concluded that petitioner "was not allowed to live there for they babysit children during the day." Id. at 8. Thus, the day after the initial meeting with petitioner, the probation officer communicated with petitioner's self-suggested contact person and let that person know that petitioner's suggested address was invalid. Petitioner either failed to communicate with his self-suggested contact person for five months or simply failed to take any steps to find valid addresses if he did so communicate.

Petitioner also argues in his objections that "[i]n order for Petitioner to receive electronic monitoring he must first meet the proper requirements 1.) He must have a valid address; 2) He must pay the daily required fee, etc…" Since he could not provide a valid address, he asks in his

objections "how could Petitioner refuse to submit to monitoring that he never qualified to receive in the first place?" Pet'r's Obj'n 7, ECF No. 26. This argument again misses the point. It was petitioner's failure to communicate with his sister - his self-suggested contact person - for five months which resulted him being surprised in August, then it was his refusal to accept the extra day given to him to find a valid address that caused him not to be able to provide one.

It should also be noted that after his arrest in August, 2010, he had three months to find a valid address before the revocation hearing but did not do so. That is, in the revocation hearing in November 2010, petitioner was asked if he had an address in Washington County in which he could live. Petitioner stated that his boss had said he would be willing to help him but that he did not know the address at that time. When the Court pressed for details, the petitioner admitted that he had not communicated with his boss since before his transfer to Miami about his living arrangements. Tr. Rev. Hr'g 24-25, ECF No. 15 ex. 1. Thus, petitioner did virtually nothing to find a valid address in either Miami-Dade County or Washington County from the time of his transfer to Miami-Dade in November 2009 until his revocation in November 2010.

Also, this argument requires that the factual findings of the state judge -- that petitioner simply refused to wear the ankle monitoring until after he was arrested --be unreasonable. Petitioner has offered nothing to convince this Court that his account is more credible than the account of the probation officer. Therefore, the state judge's findings regarding credibility were not unreasonable.

Plaintiff's credibility is also called into question by his Motion to Expand the Record and Request for an Evidentiary Hearing, ECF No. 28. In the motion, the petitioner raises the argument - for the first time in the six and a half years since his arrest and revocation - that the probation officer lied under oath when she testified that she had contacted the sister to check the

validity of the address. He supports the argument with a purported affidavit of the sister, attached to the motion as Exhibit A and date in May of 2017. The sister avers that "a few years ago"[2] petitioner contacted her about an address where he could live when released in accordance to the conditions provided by the probation officer. Then she avers that he returned to her house "3 months after" and she welcomed him with "lots of happiness." The same day, petitioner informed her he had to report to his probation officer. He left to go to the probation office and never returned, she stated. She then claimed that she and the petitioner "had not spoke [sic] of this, until not too long ago" and that "for some reason that I was not aware of until this moment" her brother was arrested. She claimed that her brother wrote her a letter recently telling her that he was arrested for not being able to provide a valid address. She then avers that she asked him what was wrong with her address and then avers that "[h]e informed me that the provation [sic] officer, whose name I don't know, had told my brother that I said to him or her (provation officer) that my brother never asked to live in my house." She then finished with the claim that "That person (provation officer) has never gotten in touch with me in relation to this situation."

The affidavit is not believable for several reasons. First, exculpatory affidavits "produced ... at the 11th hour with no reasonable explanation for the nearly decade-long delay" are "suspect." *Arthur v. Allen*, 452 F.3d 1234, 1246 (11th Cir.), opinion modified on other grounds on reh'g, 459 F.3d 1310 (11th Cir. 2006), quoting *Herrera v. Collins*, 506 U.S. 390, 423, 113 S.Ct. 853, 872, 122 L.Ed.2d 203 (1993) (O'Connor, J., concurring). Here, there is no explanation for the delay. The affidavit itself states that petitioner and his sister communicated specifically about his housing situation three months before he was released in August 2010.

---

[2]It would have been 7 years ago.

That would make that conversation two months after the probation officer visited petitioner in February 2010 and informed him she would be checking the address with the sister. It defies belief that petitioner did not discuss during the conversation with his sister two months later whether the probation officer had contacted her about the address. Second, the affidavit indicates that the petitioner returned to the sister's home on August 2 or 3, 2010, when he was released in Miami-Dade County, and told her that he had to report to the probation officer. Again, it defies belief that he did not discuss with her at that time whether the probation officer had ever checked the address with the sister. Also, the sister avers that she was not aware of why he had been arrested until recently and that the two never spoke of it for the next six and a half years. Then, out of the blue in May of 2017, the two finally communicated about the reason he was arrested - a reason which the sister was at the center of as the person whose address he gave. As the Eleventh Circuit in *Arthur* instructs, this unexplained delay renders the affidavit "suspect" at best.

     Finally, the affidavit either contains a material mistake or evidence of an intentional misrepresentation by the petitioner. The sister avers that the conversation with her brother that triggered the filing of the affidavit happened shortly before she filed it. This would make the conversation between the petitioner and his sister well after the revocation hearing in the case. During the revocation hearing -- which petitioner attended with the help of a translator -- the probation officer testified that the reason the petitioner could not stay with the sister was that the sister said that "he was not allowed to live there for they babysit children during the day." Tr. of Rev. Hr'g 8, ECF No. 15 ex 1. Petitioner therefore witnessed the probation officer testify at the revocation hearing that the sister's concern was that she babysat at the home during the day. Yet the affidavit avers that the petitioner told the sister that the probation officer said the sister's

concern was that petitioner had never asked to live there. If it were true that the probation officer told petitioner the sister claimed he never asked to live there, petitioner would have learned that fact on the day he was arrested, since he did not have contact with the probation officer after that day. Thus, he would have known during the revocation hearing that she was lying about the sister's real concern. Yet, he never raised this argument in the hearing, in any state postconviction motion or in his petition in federal court.

Under Rule 6(a) of the Rules Governing § 2254 Cases a party can only invoke the processes of discovery "if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise."); *Bracy v. Gramley*, 520 U.S. 899, 909, 117 S.Ct. 1793, 1799, 138 L.Ed.2d 97 (1997) ("Rule 6(a) makes it clear that the scope and extent of such discovery is a matter confided to the discretion of the District Court."). Also, with regard to whether a habeas petitioner is entitled to an evidentiary hearing, "a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474, 127 S.Ct. 1933, 1940, 167 L.Ed.2d 836 (2007). As stated above, the unexplained delay in filing the affidavit and the lack of its trustworthiness makes it suspect and unlikely to entitle the petitioner to habeas relief. Thus, the Motion to Expand the Record and Request for an Evidentiary Hearing is due to be denied.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. The Magistrate Judge's Report and Recommendation, ECF No. 21, is adopted and incorporated by reference in this order.

2. The Clerk shall entered this judgment: "The petition under 28 U.S.C. § 2254, ECF No. 1, is denied. A certificate of appealability is denied."

3. The Motion to Expand the Record and Request for an Evidentiary Hearing, ECF No. 28 is denied.

4. The Clerk is directed to close the file.

**DONE AND ORDERED** this *8th* day of January, 2018.


_____
UNITED STATES DISTRICT JUDGE